Filed 7/21/16  P. v. Magallon CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B260596 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA106035) |
| v. | |
| ANDREW JOSHUA MAGALLON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas W. Sortino, Judge.  Affirmed.

Janet Gusdorff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Andrew Magallon and an accomplice stole approximately $67,000 worth of merchandise from a Don Roberto jewelry store. A jury found defendant guilty of four counts of second degree robbery (Pen. Code, § 211),[1] one count for each of the four workers present in the store during the robbery. The court sentenced defendant to a total of eight years in state prison: the high term of five years on count one, and consecutive sentences of one-third the midterm of three years on each of counts two, three, and four.

Defendant challenges both his conviction and sentence. He argues the conviction cannot stand because he was prejudiced by the court's improper admission of three photographs: a self-portrait, commonly referred to as a "selfie," from his cell phone, and two surveillance photos showing him at different Don Roberto locations after the robbery. He contends his sentence cannot stand because the court relied on improper aggravating factors to support imposition of the upper term. We are not persuaded by either argument and accordingly affirm the judgment of the trial court.

## PROCEDURAL HISTORY

On July 24, 2014, the Los Angeles County District Attorney ("the People") filed an information charging defendant with four counts of second degree robbery (§ 211, counts 1-4), three counts of false imprisonment (§ 236, counts 5-7), one count of second degree commercial burglary (§ 459, count 8), one count of grand theft of personal property (§ 487, subd. (a), count 9), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1), count 10). The People further alleged that defendant personally used a firearm within the meaning of sections 12022.53, subdivision (b) and 1203.06, subdivision (a)(1) in connection with the robbery counts and personally used a firearm within the meaning of section 12022.5, subdivision (a) in connection with the false imprisonment counts. The People also alleged, as to all counts, that defendant suffered two prison priors within the meaning of section 667.5, subdivision (b). Defendant pleaded not guilty and denied the allegations.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Prior to defendant's jury trial, the People dismissed the false imprisonment, commercial burglary, and grand theft counts (counts 5-9) pursuant to section 1385. Defendant stipulated that he suffered a prior felony conviction and proceeded to jury trial on the remaining counts: robbery and felon in possession. The court granted defendant's motion to bifurcate trial of his priors.

The jury found defendant guilty on all four robbery counts. It acquitted him of the gun possession count, however, and also found all of the firearm allegations to be untrue. The People subsequently dismissed the allegations relating to defendant's prison priors.

The court sentenced defendant to a total of eight years in state prison, calculated as the upper term of five years on count one plus one-third the midterm of three years (i.e., one year) on each of counts two through four, to run consecutively. The court also imposed various fines and fees, and awarded defendant 220 days of custody credits.

Defendant timely appealed.

## FACTUAL BACKGROUND

On July 2, 2013, Aurelia Tapia, Bibiana Gil, Tiffany Lucero, and Mirtha Caldera were working at a Don Roberto store in Azusa. Miritha and, at least once, Myrna. The preliminary hearing transcript, probation report, and information spell it Mirtha. Witness Gil also spelled the name Mirtha while she was testifying. At around 2:00 p.m., Tapia and Gil saw two males wearing hooded sweatshirts enter the store. One of the men was wearing a white hoodie, and the other was wearing a black hoodie. At trial, Tapia, Gil, and Lucero[2] all identified defendant as the male wearing the white hoodie. Although both individuals wore their hoods over their heads, Gil and Lucero could see that defendant's hair was braided.

Tapia testified that the men told the store employees not to touch anything. Tapia nonetheless pressed the silent alarm button. Tapia, Gil, and Lucero all testified that

---

[2] Caldera was not called as a witness at trial.

3

defendant brandished what appeared to be a gun[3] at them and told them to get on the floor where he could see their hands.

Defendant asked Tapia where the money was and asked her to give it to him. She told him there was no money. Defendant then told Tapia, Lucero, and Caldera to go into the bathroom, and directed Gil, who had an elastic keychain on her wrist, to open the jewelry cases. Tapia, Lucero, and Caldera went into the bathroom, and Gil began removing items from the jewelry cases. She placed the items on the counter, and defendant's cohort put them into a black bag. Defendant called Gil a "bitch" and told her to hurry up. Gil remembered having seen defendant and the other perpetrator in the store the week before. She recognized defendant based on his face; she did not remember seeing a tattoo.

Defendant walked back and forth between the bathroom and the front of the store, telling the women in the bathroom not to move. Tapia was able to look directly at his face but did not see a tattoo on his neck. Lucero saw a tattoo on defendant's neck when he turned his head. Gil eventually came to the bathroom and told the others that defendant and his accomplice had left. The police responded to the scene shortly thereafter. Don Roberto loss prevention officer Attisdei Arroyo testified that an inventory revealed that roughly $67,000 worth of jewelry was missing.

Several months after the robbery, Azusa Police Department detective Chris Franks separately showed Tapia, Gil, and Lucero a six-pack photo array containing defendant's photograph. All three women identified defendant as the person who robbed the Don Roberto store in July 2013. Although defendant's photo was the only one depicting a man with a neck tattoo, neither Tapia nor Gil—both of whom had been told about but had not personally seen defendant's tattoo—relied on that characteristic in selecting his

---

[3] All three percipient witnesses unequivocally testified that defendant had a gun. Defendant cross-examined them about their lack of firearm knowledge and presented expert testimony that it is not possible to ascertain whether a weapon satisfies the Penal Code definition of a "firearm" without performing a series of tests on the weapon in question. The jury acquitted defendant of the felon-in-possession charge and found the firearm allegations not true.

4

photo. Tapia testified that she identified defendant based on "the elongated shape of his face, his pointed nose, and the way his eyes look," while Gil recognized his face and hair. The court admitted into evidence a selfie retrieved from defendant's cell phone. It showed defendant wearing a white hoodie and smoking something. His neck tattoo was not visible in the selfie.

Loss prevention officer Arroyo testified that he obtained surveillance videos dated June 26, 2013 and July 2, 2013 from the Azusa store. He also obtained a surveillance video dated July 30, 2013 from the Santa Fe Springs location, and one dated November 8, 2013 from the La Puente store. All of the videos were played for the jury, and one still photo from each of them was admitted into evidence. Gil identified defendant in the June 26, 2013 and July 2, 2013 videos. Monrovia Police Department detective Sarah Bushmeyer received the still photos when detective Franks sought identification assistance from other law enforcement agencies. She recognized defendant, with whom she had several previous contacts, in all four still photos. Detective Franks testified that defendant identified himself in the still photos. Franks further testified that defendant explained his repeated presence in multiple Don Roberto locations by stating that he had "a lot of friends that are females" and suggesting, "Maybe I was there for an anniversary."

## DISCUSSION

### I.      Admission of Evidence

Defendant contends the court erroneously admitted inflammatory and minimally probative photographs of him "appearing to smoke marijuana, and visiting multiple branches of Don Roberto's in Southern California *after* the July 2 robbery." We are not persuaded. The court did not abuse its discretion in admitting the selfie of defendant smoking, and defendant forfeited his objection to the admission of the surveillance photographs. Even if he had not, we find no error in their admission.

### A.      Governing Principles

All relevant evidence generally is admissible. (Evid. Code, § 351.) Evidence Code section 352 vests in the trial court the discretion to exclude relevant evidence "if its

5

probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "In ruling on the admissibility of photographs and videotapes under Evidence Code section 352, 'the court enjoys broad discretion in deciding whether prejudice substantially outweighs probative value.' [Citation.]" (*People v. Michaels* (2002) 28 Cal.4th 486, 532.) "A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

### B. Analysis

#### 1. Selfie

At trial, defendant contested the victims' identifications of him. To corroborate the victims' testimony about defendant's appearance on the day of the robbery, the prosecution sought to admit a selfie retrieved from defendant's cell phone. The photograph, which we have examined, is a close-up depicting defendant from the shoulders up. He is wearing a light-colored hoodie, with the hood up, and is holding an object between his teeth and with his left hand. Defendant objected to the admission of the selfie on the ground that it appeared to depict him "smoking an object which most people, if they look at it, would presume was marijuana" and was therefore unduly prejudicial under Evidence Code section 352.

The court disagreed. It noted that the item in defendant's mouth was not necessarily marijuana and "could be a cigarillo or a small cigar." The court acknowledged that "[t]here may be some prejudicial effect that it's marijuana, but again, it's not definitively that." The court reasoned that any prejudicial effect would be "extremely minor" because marijuana "as far as society is concerned, is almost legal in the state of California" and is "almost considered no different than alcohol." The court further concluded that any minimal prejudice would be outweighed by the probative value of the selfie, namely that it showed defendant "wearing a light-colored hoodie

6

that's similar to the hoodie that is displayed by one of the robbers on the surveillance video," and "goes to his ownership of the phone," from which the People obtained other photos that were admitted without objection.

This ruling was not an abuse of discretion. Identification was the primary issue in the trial, and the selfie was highly probative on this issue. It showed how defendant—and his neck tattoo—looked while he was wearing a light-colored hoodie and served to corroborate Tapia's and Gil's testimony that no tattoo was visible when defendant was so dressed. The selfie also provided the jury with a close-up view of defendant's face against which it could weigh the witnesses' observations regarding his eyes, nose, and hair. Defendant argues that the selfie "was not necessary for proving the obvious common sense inference that wearing a hoodie may obscure a neck tattoo," and that it was cumulative because the prosecution introduced "*multiple* points of corroboration that appellant was the robber, other than Exhibit 16 (the selfie)." These contentions are not sufficiently persuasive to impugn the court's analysis, particularly in light of defendant's trial strategy to argue that "[t]here's a misidentification in this particular case" because "none of the witnesses described a tattoo on the side of his neck except for one person."

On the other side of the scale, the court reasonably concluded that the risk of undue prejudice associated with the selfie was quite low. Even if, as defendant suggests, "some jurors were more 'old school' than the trial judge and would have found smoking illegal drugs to be reprehensible criminal activity," it is unclear from the selfie what, exactly, defendant was smoking, and no mention of the smoking or the nature of the substance was made during trial. Defendant also argues the selfie was unduly prejudicial because the court ruled on its admissibility mid-trial and therefore "prevented [him] from conducting voir dire as to the issue" of jurors' attitudes regarding marijuana. We are not persuaded by this contention, for, as the trial court explicitly confirmed in open court, defendant had access to the selfie before trial. He could have brought the motion to exclude earlier, and crafted his voir dire accordingly.

### 2.     Post-Robbery Surveillance Photos

During defendant's interview with Detective Franks, he identified himself in two Don Roberto surveillance photos that post-dated the robbery and explained that perhaps he visited those stores to search for anniversary presents.  The People sought to introduce defendant's statements as party admissions, and the court held a conference on that issue before the start of trial.  Defendant objected on relevance grounds, arguing that defendant's presence in other stores and explanations therefor were not at issue in this case.  The People argued that the photos showed a pattern and, moreover, were crucial to law enforcement's ultimate identification of defendant as a perpetrator of the July 2, 2013 robbery.  They further explained that "when he was interviewed by the detective why he was going to those places so often, his answer simply doesn't make sense.  It was consciousness of guilt."  Defendant reiterated his objections, stating, "I don't think the court should allow these subsequent jewelry store visits of Mr. Magallon to come into evidence, certainly shouldn't let the jury hear.  I think it's irrelevant and also under 352 it's not relevant."

The court ruled, "I am going to allow it.  It seems to me it has relevance.  It does shows [sic] a pattern of returning to the store.  He identifies himself as being the person in the videos, he comes up with an explanation the People argue is not logical and not valid.  I think it is relevant to the issue of whether or not he committed these other robberies and I do not believe it's any prejudicial effect - - pardon me - - I believe the probative value substantially outweighs any possible prejudicial effect, so the court will allow it, assuming you can lay foundation under *Miranda*."  Detective Franks subsequently testified about defendant's self-identification and explanatory statements.  The People introduced the still photos themselves through Detective Bushmeyer, who testified that she received the photos from another law enforcement agency and recognized defendant due to her prior contacts with him.  Defendant did not object to the photos during Bushmeyer's testimony regarding them or otherwise challenge the admission of the photos themselves; his objections prior to trial explicitly were directed at "the admission of the statement."

Defendant now argues that the court erred in concluding that the photographs were relevant to his participation in the July 2, 2013 robbery. He further contends that the photos did not make his "explanation (for visiting multiple locations to purchase an anniversary gift) any more or less logical," and that his visits to other jewelry stores were prejudicial because they "served only to suggest that he was visiting Don Roberto's branches to ascertain his next target." The People respond that defendant forfeited these contentions by failing to make them below, and we agree. Defendant did not object to the admission of the surveillance photographs; his objections were aimed at the admission of his statements regarding those photographs. His challenge to the photographs on appeal accordingly is not cognizable. (See Evid. Code, § 353, subd. (a); *People v. Demetrulias* (2006) 39 Cal.4th 1, 20.)

Even if it were, however, we are not persuaded that the photographs were irrelevant or unduly prejudicial. The photographs were important to and highly probative of the identification of defendant, a key issue at trial. The prosecutor did not mention any dates when discussing the photographs with Detective Bushmeyer or Detective Franks, and neither did the witnesses. Any prejudice associated with the post-robbery nature of the photographs accordingly was minimal. Defendant claims the prosecutor "prejudicially suggested" during closing argument that defendant intended to rob additional Don Roberto locations, but statements of counsel are not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 11.) Furthermore, defendant did not object to those statements at trial.

## II.     Sentencing

Defendant argues that the trial court abused its discretion by sentencing him to the upper term of five years on the base count of robbery because it relied on "aggravating factors that were either legally or factually inapplicable." Defendant points specifically to the court's conclusions that the victims were particularly vulnerable and that the crime involved the threat of great bodily harm, and further contends that the court improperly considered prior crimes of which he had been charged but not convicted. We are not persuaded.

9

### A. Governing Principles

Under California's determinate sentencing law, which specifies three terms for most offenses, the decision to impose an upper term rests within the broad discretion of the trial court. (*People v. Sandoval* (2007) 41 Cal.4th 825, 836, 847.) A trial court may base an upper term sentence upon any aggravating circumstance that the court deems "significant," and that is "'reasonably related to the decision being made.'" (*Id.* at p. 848.) "A single aggravating factor will support an upper term sentence." (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1064; see also *People v. Osband* (1996) 13 Cal.4th 622, 728.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.]" (*People v. Sandoval, supra*, 41 Cal.4th at p. 847.) California Rules of Court Rule 4.421 sets forth a non-exclusive list of appropriate aggravating circumstances the court may consider. (Cal. Rules of Court, Rule 4.408(a); *People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1325-1326.) A trial court abuses its discretion if "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*People v. Sandoval, supra*, 41 Cal.4th at p. 847.)

### B. Analysis

The trial court articulated numerous aggravating factors listed in California Rules of Court Rule 4.421 in support of its high term sentence. First, it found that the crime involved a threat of great bodily harm or violence or disclosed a high degree of viciousness. (Cal. Rules of Court, Rule 4.421(a)(1).) The court reasoned that even if defendant's gun were fake, its presence could have prompted law enforcement officials responding to the silent alarm to use deadly force. Second, the court concluded that the female victims were "particularly vulnerable given the number of men and the great monetary loss." (Cal. Rules of Court, Rule 4.421(a)(3).) Third, the court found that defendant occupied a position of leadership in the commission of the crime in light of his commands to the victims upon entry into the store and his participation in casing the store

10

the week prior to the robbery. (Cal. Rules of Court, Rule 4.421(a)(4).) Fourth, the court found that defendant's pre-robbery reconnaissance of the store evinced planning, sophistication, and professionalism. (Cal. Rules of Court, Rule 4.421(a)(8).) Fifth, the court found that the robbery involved the taking of a large amount of money. (Cal. Rules of Court, Rule 4.421(a)(9).) Sixth, the court found that defendant's criminal convictions were numerous and increasing in seriousness. (Cal. Rules of Court, Rule 4.421(b)(1).) In doing so, the court mentioned that some of his convictions originally were charged as more serious offenses. Finally, the court found that defendant had served prior custodial terms, although they were in county jail rather than state prison due to realignment. The court also considered the mitigating factors listed in California Rules of Court Rule 4.423 and concluded that the only potentially relevant factor, defendant's age, did not outweigh the "many factors in aggravation."

Defendant challenges the validity of only three of the court's seven reasons for selecting the upper term, evidently conceding that the court cited four proper bases for imposing the upper term. The court's reliance upon multiple undisputedly valid aggravating factors undermines defendant's claim of error. "A single aggravating factor will support an upper term sentence." (*People v. Weber*, *supra*, 217 Cal.App.4th at p. 1064.) Courts accordingly have concluded that a defendant's challenge to three of four aggravating factors cited by a trial could not succeed where "the trial court relied on a fourth reason that adequately supports the upper term." (*Ibid.*) We similarly conclude that the court's invocation of four plainly valid aggravating factors in support of an upper term sentence in this case was not an abuse of its discretion.

Moreover, we are not persuaded that the three reasons defendant attacks were invalid or unsupported by the record. Defendant argues that the court's conclusion about the victims' particular vulnerability was based on "stereotype, not fact," because the female employees outnumbered the male perpetrators two to one, "acted rationally and calmly under pressure," and "were not in any weakened condition of health or body." This argument disregards testimony that victim Caldera was "old" and did not speak English and further ignores the unprotected and accessible nature of the jewelry store.

11

"Particularly, as used here, means in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act. An attack upon a vulnerable victim takes something less than intestinal fortitude. In the jargon of football players, it is a cheap shot." (*People v. Smith* (1979) 94 Cal.App.3d 433, 436.) It was not an abuse of discretion for the court to conclude that four female employees of a jewelry store housing thousands of dollars of merchandise, at least one of whom was elderly and did not speak the language used by the perpetrator, were unusually susceptible to an apparent armed robbery.

Defendant also challenges the court's conclusion that the robbery involved a threat of great bodily harm. He contends the court improperly relied upon a "hypothetical scenario" of responding law enforcement officials that is "nothing more than conjecture and speculation, divorced from the facts of this case." He does not cite any legal authority in support of this contention, which we find unpersuasive in any event. It was not unreasonable for the court to conclude that an apparent armed robbery carried out in broad daylight by two young men posed a threat of great bodily harm or evinced a high degree of viciousness.

We find no more persuasive defendant's contentions that the court improperly relied "upon the nature of appellant's prior initial charges, as opposed to prior convictions," and periods of incarceration in county jail to justify the high term. During its comprehensive recitation of the relevant aggravating factors, the court noted that defendant had "a grand theft person originally charged as a robbery from Glendora, October of 2011" and "a conviction for grand theft reduced from a robbery." There is no suggestion in the court's statements that the court relied on the original charges rather than the offenses of conviction to conclude that defendant's "criminal activity is ongoing, essentially nonstop, and increasing in seriousness," a finding paraphrasing California Rules of Court Rule 4.421(b)(2). Likewise, the fact that defendant served his felony sentences in county jail rather than state prison due to realignment does not render the

12

court's conclusion that defendant "didn't get the message that he should stay out of trouble" an abuse of discretion.

**DISPOSITION**

The judgment of the trial court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.


13